**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
                              )
ESTATE OF PASCAL              )
CHARLOT et al.,               )
                              )
          Plaintiffs,         )
                              )
     v.                       )   Civ. Action No. 03-2501 (EGS)
                              )
BUSHMASTER FIREARMS, INC.,    )
                              )
          Defendant.          )
                              )
_____)
```

**MEMORANDUM OPINION**

Plaintiffs brought this case under the District of Columbia Assault Weapons Manufacturing Strict Liability Act ("SLA" or "the Act"), D.C. Code §§ 7-2551.01 to 7-2551.03 (2001).  The Court stayed the case pending a final decision on the constitutionality of the SLA by the District of Columbia Court of Appeals.  *See District of Columbia v. Beretta* ("*Beretta V*"), 940 A.2d 163 (D.C. 2008), *cert. denied*, 129 S. Ct. 1579 (2009).[1]  In the interim, Congress passed the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901 *et seq.*, and defendant filed a second motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Defendant's new motion argues that the PLCAA foreclosed or preempted plaintiffs' SLA action.  Plaintiffs

---

[1]  The *Beretta Cases* are fully cited and identified in this memorandum opinion as *Beretta I* through *Beretta V*.  *See infra* Section I.C.

respond that their suit falls within one of the exceptions of the PLCAA, and also that the PLCAA is unconstitutional under *United States v. Klein*, 80 U.S. 128 (1871).  The United States has intervened to defend the constitutionality of the federal statute. Pending before the Court is defendant's motion for judgment on the pleadings.  After careful consideration of defendant's motion, plaintiffs' opposition, defendant's reply, *amicus* filings the entire record, and applicable case law, this Court **GRANTS** defendant's motion for judgment on the pleadings.

## I.    BACKGROUND

### A.    *Factual History*

When presented with a motion on the pleadings, the Court "accepts the facts as alleged in the complaint."   *Whiteing v. District of Columbia*, 521 F. Supp. 2d 15, 17 (D.D.C. 2007). Plaintiffs are the personal representatives of the Estate of Pascal Charlot.  Plaintiffs allege that Charlot was shot and killed with a Bushmaster XM-15 E2S .223 caliber semiautomatic assault rifle ("rifle") in Washington, D.C., on October 3, 2002. Compl.  ¶ 2.  John Allen Mohammad and Lee Boyd Malvo were charged with the shooting.[2]  *Id.*  The defendant, Bushmaster Firearms, Inc. ("Bushmaster" or "defendant"), is the gun manufacturer that

---

[2]  Mohammad and Malvo, known as the D.C. Snipers, terrorized the Washington, D.C. metropolitan area, killing sixteen people over the course of forty-seven days in October and November 2002. *See* Carol Morello, "Va. Court Upholds Muhammad Sentences," Wash. Post, April 23, 2005, at B1.

produces the rifle.  *Id.*  Plaintiffs bring this action under the
SLA.

Plaintiffs allege that Bushmaster manufactured the weapon at
issue, put it into the stream of interstate commerce, and sold it
directly to Bull's Eye Shooter Supply of Tacoma, Washington
("Bull's Eye").  *Id.* at ¶ 21.  Bull's Eye received the weapon on
July 2, 2002.  Plaintiffs further allege that the rifle used to
kill Charlot was manufactured after October 7, 1994, the day the
SLA became applicable to machine guns.  *Id.* ¶ 26.  Plaintiffs
state that the weapon was recovered by police, who confirmed that
Charlot was shot and killed with the Bushmaster rifle.  *Id.* ¶ 13.
According to the SLA, a machine gun is defined as a "firearm which
shoots, is designed to shoot, or can be readily restored to shoot
automatically more than one shot without manual reloading, by a
single function of the trigger."  D.C. Code § 7-2501.01(10).
Plaintiffs allege that the weapon used to kill Charlot falls
within this definition of machine gun, as

> it can readily be converted to shoot more than 12 shots
> without manual reloading.  Bushmaster markets 40 round
> magazines as available for sale to the general public for
> only $24.95.  These magazines are used to convert the
> Bushmaster assault rifle to permit the firing of 40 rounds
> of ammunition without pausing to reload manually.

Compl. ¶ 27.

## B.   *Procedural History*

Plaintiffs originally filed this case in Superior Court of
the District of Columbia ("Superior Court") on October 1, 2003.

3

Defendant removed the action to this Court on December 5, 2003 pursuant to diversity jurisdiction under 28 U.S.C. § 1332.  On January 21, 2004, defendant filed a motion for judgment on the pleadings; plaintiffs filed a motion for partial summary judgment on February 20, 2004.  On May 5, 2004, after the D.C. Court of Appeals decided *District of Columbia v. Beretta* ("*Beretta II*"), 847 A.2d 1127 (D.C. 2004), this Court, *sua sponte*, ordered the parties to file simultaneous pleadings regarding the applicability of the rationale of *Beretta II* to the issue raised in this case. After a motions hearing held on July 29, 2004, defendant, with the support of *amici*, urged the Court to grant a stay in this case until after *Beretta II* became final.  On September 10, 2004, after a second motions hearing, the Court stayed the case pending final resolution of *Beretta II* and ordered the parties to keep this Court apprised of any developments.  On October 10, 2005, following the Supreme Court's denial of certiorari in *District of Columbia v. Beretta* ("*Beretta III*"), 872 A.2d 633 (D.C. 2005), *cert. denied* 546 U.S. 928 (2005), this Court ordered the parties to file a joint proposal for further proceedings.

On November 15, 2005, the Court held a status hearing at which plaintiffs asked the Court to temporarily lift the stay for the limited purpose of enabling them to file a motion for leave to file an amended complaint.  The Court granted plaintiffs' request and also lifted the stay to allow defendant to brief the

applicability of the PLCAA.  The Court set a briefing schedule –
including filings from *amici*, the District of Columbia and The
Sporting Arms and Ammunition Manufacturers Institute, Inc., and
the United States – that permitted filings through February 24,
2006.  The stay remained in effect as to all other matters.  After
a motions hearing on April 18, 2006, the Court took defendant's
motion for judgment on the pleadings under advisement.  While the
motions were under advisement, another iteration of *Beretta* was
proceeding through the District of Columbia court system.  *See
District of Columbia v. Beretta* ("*Beretta IV*"), 2006 WL 1892023
(D.C. Super. May 22, 2006); *see also infra* Section I.C.  Given the
potential impact of *Beretta IV* on this case, the Court again
stayed consideration of the pending motions to await the final
resolution of *Beretta IV*.  *The appeal in Beretta IV* was decided by
the D.C. Court of Appeals on January 10, 2008.  *Beretta V*, 940
A.2d at 163.

On February 7, 2008, after the parties jointly recommended
supplemental briefing to address the applicability of *Beretta V*,
this Court denied defendant's motion for judgment on the pleadings
without prejudice and ordered the parties to file any potentially
dispositive motions thirty days after the decision in *Beretta V*
became final.  The Court set a briefing schedule for the motions,
including an opportunity for the United States, as intervenor, to

file its submission.  *Beretta V* became final on March 9, 2009 when
the Supreme Court denied certiorari.  *See* 129 S. Ct. at 1579.

## C.  *The Many Iterations of* Beretta

*Beretta* was originally filed in 2002 in D.C. Superior Court.
*See District of Columbia v. Beretta* ("*Beretta I*"), 2002 WL
31811717 (D.C. Super. Dec. 16, 2002).  Plaintiffs brought an
action seeking compensatory damages and other equitable relief for
conduct by defendants that plaintiffs alleged gave rise to
liability under common law claims of negligence and public
nuisance, as well as under the SLA.  Defendant filed a motion for
judgment on the pleadings seeking dismissal of the suit.  The
Superior Court entered judgment for defendant and dismissed the
action, finding the SLA to be an unconstitutional exercise of
extraterritorial regulation by the District.  *See id.* at *48.

On appeal, the D.C. Court of Appeals affirmed in part and
reversed in part, holding that the SLA is constitutional and
allowing the individual plaintiffs to advance to discovery.  *See*
*Beretta II*, 847 A.2d at 1151.  An *en banc* hearing of the D.C.
Court of Appeals vacated the panel's opinion and superceded the
panel's decision.  *See Beretta III*, 872 A.2d at 633.  *Beretta III*
held, *inter alia*, that (1) the SLA confers a right of action on
individuals who are injured, but not on the District; (2) the SLA
does not violate the Commerce Clause; (3) and the SLA does not
violate due process.  The D.C. Court of Appeals remanded the case

to the Superior Court, but before the case was heard on remand in Superior Court, Congress enacted the PLCAA.

On remand, the Superior Court granted defendant's motion for judgment on the pleadings and held that plaintiffs' causes of action under the SLA fall squarely within the PLCAA's definition of a "qualified civil liability action" and did not fall within the PLCAA's predicate exception. *See Beretta IV*, 2006 WL 1892023, at *9. The Superior Court also concluded that the PLCAA was a constitutional exercise of congressional authority. On appeal, the D.C. Court of Appeals affirmed the decision of the Superior Court and held, *inter alia*, that (1) the District's and individuals' SLA causes of action were a "qualified civil liability action" barred by the PLCAA, and (2) the PLCAA did not violate separation of powers by usurping a judicial function and directing a court to take a specific position in the pending SLA action. *See Beretta V*, 940 A.2d at 169-74. The Supreme Court denied certiorari on March 9, 2009. *See* 129 S. Ct. at 1579.

**D.    *The D.C. Court of Appeals Holdings in* Beretta V**

In *Beretta V*, the plaintiffs conceded that "if their action is not one alleging 'violat[ion by the defendants of] a . . . statute applicable to the sale or marketing of' a firearm, 15 U.S.C. § 7903(5)(A)(iii), then it is a 'qualified civil liability action' that must be dismissed, unless the Constitution dictates otherwise." *Beretta V*, 940 A.2d at 169 (footnote omitted).

Plaintiffs argued that they met the predicate exception[3] because their complaint alleged that the defendant "knowingly violated" the SLA, a statute that by its express terms "'appli[es] to the sale or marketing of' a class of firearms." *Id.* at 169.  The D.C. Court of Appeals rejected this argument, noting that it had difficulty seeing how defendants "may be said to have 'violated' the SLA." *Id.* at 170.  The court further reasoned:

> In ordinary language, a "violation" is understood to mean "an infringement or transgression," and a violation of a law to mean "[a]n infraction or breach of the law."  Plain meaning, therefore, would seem to require the law in question to contain a prohibition against, or standards of, conduct that are being violated.

*Id.* (internal citations omitted).  The court noted that D.C. Code § 7-2531.02(a), which generally mirrors the SLA,

> requires proof that the defendant knowingly and willfully engaged in *the illegal sale* of a firearm, defined to mean any of four actions including [f]ailure to establish proof of the purchaser's residence in a jurisdiction where the purchase of the weapon is legal, or [f]ailure to maintain full, complete, and accurate records of firearm sales as required by local, state, and federal law.

---

[3]   The PLCAA provides for six exceptions to the mandate that qualified civil liability actions must be dismissed.  *See* 15 U.S.C. § 7903(5)(A)(i)-(vi).  The exception relevant here, which has been called the "predicate exception," *City of New York v. Beretta*, 524 F.3d 384, 390 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 1579 (2009), provides that a suit may proceed when a plaintiff adequately alleges that a "manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought."  § 7903(5)(A)(iii); *see also Beretta V*, 940 A.2d at 169-70.

*Id.* (internal quotation marks and citations omitted).  The problem the Court of Appeals found, however, is that plaintiffs did not allege liability under D.C. Code § 7-2531.02, "nor is their SLA claim that the defendants knowingly violated any proscriptions or requirements of local or federal law governing the sale or possession of firearms."  *Id.*  Rather, plaintiffs argued that the SLA, which by its terms would make these defendants "strictly liable in tort" for death or injuries resulting from the discharge of an assault weapon or machine gun they manufactured or sold, embodies "'a legal duty owed to the residents of the District'" and that its requirement to compensate for injuries "'thus presupposes a "violation" of a statutory duty.'"  *Id.* (quoting Br. for Individual Plaintiffs at 4-5).

The court rejected this argument, noting that "it stretches the meaning of 'violation' well beyond what the authors of the PLCAA reasonably intended."  *Id.*  Accordingly, the court found that "[t]he SLA imposes no duty on firearms manufacturers or sellers to operate in any particular manner or according to any standards of care or reasonableness."  *Id.* (citation omitted).  The court noted that in the plaintiffs' view, the statute is "'violated' . . . merely when a person is killed or injured by the discharge of an assault weapon manufactured or sold by a named defendant – an injury that may occur years after the manufacture

or sale and despite the utmost care taken in the manufacture or sale." *Id.*

The court held that "[b]y the terms of the PLCAA, the plaintiffs' action under the SLA was properly dismissed."  *Id.* at 172.  The court reasoned that "[s]hoehorning, as it were, into the predicate exception a strict liability cause of action that, at bottom, simply shifts the cost of injuries resulting from the discharge of lawfully manufactured and distributed firearms would, in our view, 'frustrate Congress's clear intention' reflected in the PLCAA."  *Id.* (internal citation omitted).

## II.   STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) will be granted only if "the moving party demonstrates that no material fact is in dispute and that it is 'entitled to judgment as a matter of law.'"  *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (quoting *Jablonski v. Pan Am. World Airways*, 863 F.2d 289, 290 (3d Cir. 1988)).  The Court must "'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.'"  *Id.* (quoting *Jablonski*, 863 F.3d at 290-91).

## III.   LEGAL FRAMEWORK

### A.   *The SLA*

The Council of the District of Columbia enacted the SLA in December 1990, and the law took effect on February 29, 1992.  The SLA provides that

> Any manufacturer, importer, or dealer of an assault weapon or machine gun shall be held strictly liable in tort, without regard to fault or proof of defect, for all direct and consequential damages that arise from bodily injury or death if the bodily injury or death proximately results from the discharge of the assault weapon or machine gun in the District of Columbia.

D.C. Code § 7-2551.02.[4]  The SLA imposes strict liability based on findings that "assault weapons" and "machine guns" are "abnormally and unreasonably dangerous," and "[i]t is foreseeable by manufacturers and distributors of assault weapons that the criminal or accidental use of assault weapons will cause injury or death."  *See* D.C. Law 8-263 [Act 8-289], § 2(12), (13), DCR 8482 (Dec. 28, 1990).

## B.   *The PLCAA*

The PLCAA became law on October 26, 2005, and prohibits the institution of a "qualified civil liability action" in any state or federal court.  15 U.S.C. § 7902(b).  It further provides that any such "action that is pending on [the date of enactment of this Act] shall be immediately dismissed by the court in which the action was brought or is currently pending."  *Id.*  A "qualified

---

[4]   D.C. Code § 7-2551.03 lists exemptions from liability, including an exemption for a weapon originally distributed to law enforcement.  § 7-2551.03(a).  The SLA also provides that "[a]ny defense that is available in a strict liability action shall be available as a defense under this unit."  § 7-2551.03(d).

civil liability action" is defined as "a civil action . . .
brought by any person against a manufacturer or seller of a
[firearm that has been shipped or transported in interstate or
foreign commerce] . . . for damages, . . . or other relief
resulting from the criminal or unlawful misuse of [the firearm]."
*Id.* § 7903(5)(A).

Congress enacted the PLCAA in response to "[l]awsuits . . .
commenced against manufacturers, distributors, dealers, and
importers of firearms that operate as designed and intended, which
seek money damages and other relief for the harm caused by the
misuse of firearms by third parties, including criminals." *Id.* §
7901(a)(3). Congress found that manufacturers and sellers of
firearms "are not, and should not, be liable for the harm caused
by those who criminally or unlawfully misuse firearm products or
ammunition products that function as designed and intended." *Id.*
§ 7901(a)(5). Congress found egregious "[t]he possibility of
imposing liability on an entire industry for harm that is solely
caused by others." *Id.* § 7901(a)(6). Indeed, the PLCAA's stated
primary purpose is

> [t]o prohibit causes of action against manufacturers,
> distributors, dealers, and importers of firearms or
> ammunition products, and their trade associations, for the
> harm solely caused by the criminal or unlawful misuse of
> firearm products or ammunition products by others when the
> product functioned as designed and intended.

*Id.* § 7901(b)(1).

The PLCAA provides for six exceptions to the definition of a "qualified civil liability action."  *See* § 7903(5)(A)(i)-(vi). Most relevant to this case, a qualified civil liability action "shall not include . . . an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought."  *Id.* § 7903(5)(A)(iii).  This is known as the "predicate exception."  *See supra* n.3.

## IV.  DISCUSSION

### A.  *The SLA and the Predicate Exception*

Defendant maintains that *Beretta V* correctly held that a claim under the SLA does not fit within the predicate exception of the PLCAA, because the SLA does not proscribe any conduct nor is it a statute "applicable to the sale or marketing," § 7903(5)(A)(iii), of firearms within the meaning of the predicate exception of the Act.  Even if it were possible for Bushmaster to "violate" the SLA, defendant contends, that violation would not be a proximate cause of plaintiffs' harm, as required for the claim to fit within the predicate exception of the PLCAA.

*Beretta V* notwithstanding, plaintiffs argue that the PLCAA's statutory exception includes, by its plain language, violations of the SLA.  Plaintiffs maintain that the SLA *is* a statute "applicable to the sale or marketing," § 7903(5)(A)(iii), of

firearms as defined by the PLCAA and that plaintiffs have fulfilled the proximate cause requirement of the statutory exception to the PLCAA by alleging a violation of the SLA. Plaintiffs argue that this Court is not bound by *Beretta V* because the D.C. Court of Appeals is not a federal court.

Plaintiffs are not entirely correct.  While it is true that this Court is not bound by the D.C. Court of Appeals' interpretation of the PLCAA, this Court *is* bound by the D.C. Court of Appeals' interpretation of the SLA, a District of Columbia statute.  "Resolution of all claims that arise under state law, whether brought in federal court or not, is controlled by the substantive law of the state that creates the cause of action." *U.S. Through Small Bus. Admin. v. Peña*, 731 F.2d 8, 11 (D.C. Cir. 1984) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938)). *Erie* "fully applies to federal courts in the District of Columbia when they exercise jurisdiction over state-created causes of action."[5]  *Id.* (citing *Anchorage-Hynning & Co. v. Moringiello*, 697 F.2d 356, 360-61 (D.C. Cir. 1983).  Construing the SLA, the D.C. Court of Appeals found that Beretta had not "violated" the SLA within the meaning of the predicate exception of the PLCAA.  *See Beretta V,* 940 A.2d at 170-71.  The D.C. Court of Appeals holding that the SLA is not a predicate exception is binding on this

---

[5].  For the purposes of diversity jurisdiction, the District of Columbia is treated as a state.  *See* 28 U.S.C. § 1451.

Court.  *See Steorts v. Am. Airlines, Inc.*, 647 F.2d 194, 197 n.24 (D.C. Cir. 1981) ("[D]eference due to the District of Columbia Court of Appeals as the highest court of the District require the federal courts here to abide by the guidelines established by *Erie* and its progeny.").

The *Beretta Cases* are nearly identical to the case before this Court.  The legal arguments made by the parties here are identical to some of the arguments the D.C. Court of Appeals rejected in *Beretta V*.  *See supra* Section I.B.  As determined by the D.C. Court of Appeals, the SLA is not a predicate exception statute within the meaning of 15 U.S.C. § 7903(5)(A)(iii), because Bushmaster cannot be said to have violated the SLA simply by lawfully selling a gun to Bull's Eye.  That determination notwithstanding, this Court must still decide whether the PLCAA is constitutional.  Plaintiff is correct that the D.C. Court of Appeals' construction of federal law is not controlling precedent for this Court.  *See Silvas v. E*Trade Mortg. Corp.*, 421 F. Supp. 2d 1315, 1321 n.4 (S.D. Cal. 2006) ("In any event, none of these California decisions are binding on this Court since they are state decisions interpreting federal preemption law.").  This Court must decide the constitutionality of the PLCAA for itself.  Having determined – based on the D.C. Court of Appeals' holding in *Beretta V* – that the predicate exception does not apply, this Court now turns to that task.

B.    *The Constitutionality of the PLCAA*

Plaintiffs contend that the PLCAA is unconstitutional under the separation of powers principles announced in *Klein* because Congress has directly instructed the courts to dismiss all cases falling into a certain category.  Just as in *Beretta V*, plaintiffs challenge the PLCAA on the grounds that Congress has attempted to direct the outcome of a pending case – thereby usurping the judiciary's role to decide cases and violating the separation of powers doctrine.  *See Beretta V*, 940 A.2d at 172.

In addition to the D.C. Court of Appeals, both the Second and Ninth Circuits have held that the PLCAA does not contravene the principles of separation of powers first articulated in *United States v. Klein*, 80 U.S. 128 (1871).  *See City of New York v. Beretta*, 524 F.3d 384 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 1579 (2009); *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009). Defendant argues that the PLCAA is constitutional because it creates a new federal standard that governs when a manufacturer of a firearm may be sued for harm resulting from the misuse of the firearm.  Defendant urges the Court to follow the D.C. Court of Appeals and the Second and Ninth Circuits, which upheld the constitutionality of the PLCAA.

The United States – which intervened in this case to defend the constitutionality of the PLCAA – argues that the PLCAA is constitutional under the Supremacy Clause, as it preempts state or

common law causes of action.[6]  The United States asserts that the PLCAA is consistent with separation of powers principles announced in *Klein* because the PLCAA imposes a new legal standard that is not restricted to pending cases.  Like defendant, the United States maintains that in enacting the PLCAA, Congress has done nothing more than create a new governing law, in that federal law now preempts certain state and common law claims, whereas no preemption previously existed.

This Court starts from the premise that Acts of Congress are entitled to a "strong presumption of validity."  *Gonzales v. Raich*, 545 U.S. 1, 28 (2005).  Under this presumption, laws with an economic purpose are upheld "absent proof of arbitrariness or irrationality on the part of Congress."  *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 83 (1978) (citations omitted).  Under *Klein*, however, Congress cannot direct the outcome of a pending case without changing the substantive law underlying the suit.

In *Klein*, Congress, unhappy with a court's decision that proof of loyalty to the Union after the Civil War could be established by presidential pardon, passed a law directing the Supreme Court to dismiss any suit in which the claimant had

---

[6]  The plaintiffs do not challenge Congress's authority to enact the PLCAA, so there is no need to address Congress's authority here.  For a discussion of Congress's authority to enact the PLCAA under the Commerce Clause, see *City of New York*, 524 F.3d at 393-95.

established loyalty on the basis of a pardon.  *Klein*, 80 U.S. at 143-44.  The Court held that Congress impermissibly "required [the court] to ascertain the existence of certain facts and thereupon to declare that its jurisdiction had ceased, by dismissing the bill."  *Id.* at 146.  Plaintiffs argue that the PLCAA contains a similar command:  ascertain whether an action is a "qualified civil liability action" and thereupon dismiss it.

Plaintiffs contend that the PLCAA arose out of Congress's dissatisfaction with judicial interpretations of existing laws.  A report by the House Judiciary Committee explains that Congress was concerned that "various public entities that have brought suit against the gun industry in recent years have raised novel claims" and that "approximately half [of these suits] have been allowed to proceed."  H.R. Rep. No. 109-24 at 13-16.  Plaintiffs also point to the findings in the PLCAA, which warn of "[t]he possible sustaining" of "liability actions . . . by maverick judicial officer or petit jury."  15 U.S.C. § 7901(a)(7).  In response, Congress enacted the PLCAA "to prevent . . . courts . . . from setting precedents that will further undermine American industries and the U.S. economy."  H.R. Rep. No. 109-24 at 5.

Defendant responds that (1) the PLCAA reflects a change in existing law; and (2) that even if it did not change existing law, the PLCAA does not impose a rule of decision in violation of *Klein*.  The Court is persuaded by defendant's argument.  *Klein*'s

prohibition does not prevent Congress from changing the law applicable to pending cases. *See Plaut v. Sprindthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) ("Whatever the precise scope of *Klein*, however, later decisions have made clear that its prohibition does not take hold where Congress 'amends applicable law'" (quoting *Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 441 (1992))); *Axel Johnson Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 81 (2d Cir. 1993) ("The rule of *Klein* precludes Congress from usurping the adjudicative function assigned to the federal courts under Article III.  However, *Klein* does not preclude Congress from changing the law applicable to pending cases.").  While Congress is barred from "retroactively commanding the federal courts to reopen final judgments," *Plaut*, 514 U.S. at 218, "Congress may require (insofar as separation-of-powers limitations are concerned) that new statutes be applied in cases not yet final," *id.* at 233 n.7.  If a new law imposes a "new legal standard" that is not restricted to pending cases, there is no separation of powers violation.  *Miller v. French*, 530 U.S. 327, 349 (2000).

Plaintiffs contend that the PLCAA takes the unusual approach of defining a specific group of lawsuits based on existing law and directing the judicial branch to dismiss them.  In the Court's view, however, that is not what Congress did when it enacted the PLCAA.  Congress enacted a law barring qualified civil liability as defined in the statute, which sets forth a new legal standard

to be applied to all actions.  In so doing, Congress proceeded in a way that has been upheld by the Supreme Court.  In *Robertson*, several environmental organizations filed lawsuits to stop timber harvesting in old growth forests as violative of certain statutes. In response, Congress passed a law amending the governing law by allowing the harvest under certain conditions and, if those conditions were met, the statutory requirements at issue would be satisfied.  *Robertson,* 503 U.S. at 438-39.  The Supreme Court found that *Klein* was not violated because Congress had "compelled changes in law, not findings or results under old law."  *Id.* at 438; *see also Axel Johnson, Inc.*, 6 F.3d at 82 (upholding amendment to Securities and Exchange Act); *City of Chicago v. U.S. Dep't of the Treasury*, 423 F.3d 777, 780 (7th Cir. 2005) (upholding changes to law under Consolidated Appropriations Act of 2005).

The PLCAA creates a new federal standard that governs when plaintiffs can sue manufacturers or sellers of firearms.  As the Second Circuit explained,

> [T]he Act permissibly sets forth a new rule of law that is applicable both to pending actions and to future actions. The PLCAA bars qualified civil liability actions, as defined in the statute.  The definition of qualified civil liability action permissibly sets forth a new legal standard to be applied to all actions.

*City of New York*, 524 F.3d at 395 (citing *Miller*, 530 U.S. at 348-49).  The statute preempts and displaces conflicting state law. Preemption, rather than amending a specific statute, does not make

20

it any less a change in the law or render it constitutionally infirm.  *See Ileto*, 565 F.3d at 1131-37.

"Pursuant to the Supremacy Clause of Article VI of the U.S. Constitution, state law is preempted when it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Cleveland County Ass'n for Gov't by People v. Cleveland County Bd. of Comm'rs*, 142 F.3d 468, 477 (D.C. Cir. 1998) (quoting *Wash. Serv. Contractors Coal. v. District of Columbia*, 54 F.3d 811, 815 (D.C. Cir. 1995)).  Accordingly, Congress may abrogate tort claims consistent with separation of powers principles even when legislation has an impact on pending cases.  Tort law is generally regulated by the states, which have "considerable flexibility" in defining that body of law.  *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).  If a state's tort laws burden interstate commerce, however, then its power is subordinate to federal law.  *Id.* at 571 ("[O]ne State's power to impose burdens on the interstate market . . . is not only subordinate to the federal power of interstate commerce, but is also constrained by the need to respect the interests of other States." (citations omitted)).  Congress manifested a clear intent to preempt state tort actions by designing the PLCAA to conflict with contrary state or common law laws.  *See supra* Section III.B.; 15 U.S.C. § 7901(b)(4) ("The purpose[] of this chapter [includes the prevention] of such lawsuits to impose unreasonable burdens on

interstate and foreign commerce."). "In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, [the Court's] sole task is to ascertain the intent of Congress." *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987) (citations omitted). One of Congress's purposes in enacting the PLCAA was to "prohibit causes of action" that constitute qualified civil liability actions. *See* 15 U.S.C. § 7901 2(b)(1).

The Court rejects plaintiffs' argument that the PLCAA imposes an impermissible rule of decision upon the courts. Unlike the provision at issue in *Klein*, the PLCAA does not directly interfere with judicial fact-finding. *See Klein*, 80 U.S. at 130-34. The PLCAA identifies particular types of claims that are not permissible and leaves it to the courts to apply those standards in the cases before them. *See* § 7903(5)(A)(iii); *City of New York*, 524 F.3d 390. The statute permits the courts to determine whether the cases before them, such as this one, are covered by the PLCAA. *Id.* Defendant has persuasively demonstrated that this case is squarely covered by the PLCAA.

Contrary to plaintiffs' contention, the PLCAA leaves in place a judicial function before the Court: to determine whether the suit in question falls into the general category and not one of the exceptions. *See* § 7903(5)(A)(i)-(vi); *see also City of New York*, 524 F.3d at 395-96; *Ileto*, 565 F.3d at 1139-40. Though

plaintiffs rely heavily on *Klein* to argue that the PLCAA
contravenes separation of powers, every other court to examine the
constitutionality of the PLCAA has found that it does not violate
*Klein*.   *See, e.g.*, *Adames v. Sheahan*, 2009 WL 711297 (Ill. Mar.
18, 2009).

As discussed above, in *Beretta V*, the D.C. Court of Appeals
held that

> *Plaut* and *Robertson* demonstrate why *Klein* does not apply
> to this case.  The PLCAA sets forth new standards that
> must be met before a case may be brought or a pending one
> may proceed against the manufacturer or seller of a
> firearm for damages resulting from the use of the firearm
> by a third person.  When, but only when, a suit is found
> by a court not to meet one of the statutory exceptions to
> a "qualified civil liability action," it must be
> dismissed.

940 A.2d at 173.

The Second and Ninth Circuits reached the same conclusion.
As the Second Circuit noted

> Article III of the Constitution establishes a judicial
> department with the province and duty . . . to say what
> the law is in particular cases and controversies.  Article
> III forbids legislatures from prescribing rules of
> decision to the Judicial Department of the government in
> cases pending before it.  However, this prohibition does
> not take hold when Congress amends applicable law.

*City of New York*, 524 F.3d at 395 (internal quotation marks and
citations omitted).  "Because the PLCAA does not merely direct the
outcome of cases, but changes the applicable law, it does not
violate the doctrine of separation of powers."  *Id.* at 396.

The Ninth Circuit, favorably citing both *Beretta V* and *City
of New York*, also found that the PLCAA was constitutional and did

not contravene *Klein*.  The Ninth Circuit noted that "if a statute
compels changes in the law, not findings or results under old law,
it merely amends the underlying law, and is therefore not subject
to a *Klein* challenge."  *Ileto*, 565 F.3d at 1139 (internal
quotation marks and citations omitted).  This distinction is key
to this Court's holding.  Rejecting plaintiffs' argument that
Congress had compelled results under old law, the Ninth Circuit
said, "[h]ere, Congress has amended the applicable law; it has not
compelled results under old law.  The PLCAA sets forth a new legal
standard – the definition (with exceptions) of a 'qualified civil
liability action' – to be applied to all cases."  *Id.* at *10.  The
Ninth Circuit also rejected plaintiffs' arguments that the PLCAA
somehow violated *Plaut*'s holding that Congress cannot "overrule[]
'the judicial department with regard to a particular case or
controversy.'"  *Id.* (quoting *Plaut*, 514 U.S. at 227).  The Ninth
Circuit noted that "the quoted sentence makes clear, that rule
applies to *final* decisions by the judiciary, not to pending
cases."  *Id.* (citing *Plaut*, 514 U.S. at 227 ("[E]ach court, at
every level, must decide [a case] according to existing laws.
*Having achieved finality, however*, a judicial decision becomes the
last word of the judicial department with regard to a particular
case or controversy [and cannot be overruled by congressional
act].")).  The PLCAA applies only to pending and future cases and
does not purport to undo final judgments of the judiciary.  *Id.*

24

This Court concurs with the rationale of the other courts that have examined the PLCAA.  *See Beretta V* 940 A.2d at 163; *City of New York*, 524 F.3d at 384; *Ileto*, 565 F.3d at 1126.  Thus, this Court concludes that the PLCAA withstands constitutional scrutiny and that plaintiffs' SLA claims are preempted by the federal statute.

## V.   CONCLUSION

In view of the foregoing, defendant's motion for judgment on the pleadings is **GRANTED.**  Defendant's motion to strike, motion for leave to file, and plaintiffs' motion for partial summary judgment are **DENIED AS MOOT.**  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **June 25, 2009**